CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 3 0 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **BILLY H.,** | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:18-CV-0171 |
| | ) |
| **v.** | ) |
| | ) |
| **ANDREW SAUL, Commissioner of** | ) |
| **Social Security,** | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou,

United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of

fact and a recommended disposition. The magistrate judge filed a report and recommendation

(R&R) on August 15, 2019, recommending that the plaintiff's motion for summary judgment

be denied, the Commissioner's motion for summary judgment be granted, and the

Commissioner's final decision be affirmed. Plaintiff Billy H. ("Billy") filed objections to the

report to which the Commissioner responded, and this matter is now ripe for the court's

consideration.

## I. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil

Procedure[1] is designed to "train[ ] the attention of both the district court and the court of

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely

conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir. 2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made.*'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates his previously-raised arguments will not be given "the second bite at the apple [he] seeks;" instead, his re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## III. The Administrative Law Judge ("ALJ") Decision[2]

Billy, born on September 15, 1981, suffered a traumatic head injury when he was hit by a car at nine years old. Following the head injury, he was noted to have variable moods ranging quickly from happiness to anger. It was also noted at the time that he went from being an average student to needing special education services for academic and behavioral support.

On July 5, 2013, Billy applied for disability benefits for three different periods in his life. He sought child's disability insurance benefits ("CDB") for the period of September 15, 1999 through September 15, 2003 (his 18th through 22nd birthdays). He sought disability insurance benefits ("DIB") for the period of July 1, 2003 through March 2013 (his date first insured through his date last insured); and supplemental security income (SSI) for the period of June 12, 2013 through May 19, 2017 (his protective filing date through the date of the ALJ's decision). R. 16, 239-261.

The ALJ applied the five-step sequential evaluation, set out in 20 C.F.R. §§ 404.1520(a) and 416.920(a), to each period of disability.[3] With regard to Billy's claims for CDB and DIB,

---

[2] Detailed facts about Billy's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 25) and in the administrative transcript (ECF No. 9) and will not be repeated here.
[3] In the evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. in 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1, or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Id. At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4, and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. at 635. The claimant bears the burden of proof on the first three steps and the burden shifts to the Commissioner on the fifth step. Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015).

the ALJ found him not disabled at Step 1 because he had engaged in substantial gainful activity during the relevant time periods. Then, "to be thorough," the ALJ also addressed the evidence related to Step 2. R. 16-17.

Regarding Billy's claim for SSI, where Billy would need to establish that he was disabled between June 12, 2013 and May 19, 2017, the ALJ found that Billy had severe impairments of major depressive disorder, panic disorder, mood disorder, and alcohol abuse in remission, but that none of his impairments met or equaled a listed impairment. At Step 4 of the evaluation, the ALJ found that Billy had the RFC to do a full range of work at all exertional levels, but with the nonexertional limitations of being limited to unskilled work that is low stress, defined as only occasional decision-making and only occasional changes in the work setting. He could have no interaction with the public and only occasional interaction with coworkers and supervisors in jobs that require no more than occasional simple communication. Based on the testimony of the vocational expert at the hearing, the ALJ then found that Billy could do the jobs of dishwasher, folder, and label maker, all of which exist in significant numbers in the national economy. Thus, the ALJ concluded that Billy is not disabled.

Billy argued to the magistrate judge that determinations by the ALJ at various stages of the evaluation were not supported by substantial evidence. The magistrate judge found that the ALJ opinion was supported by substantial evidence in all respects. These objections followed.

## IV. Objections

Billy objects to the following findings by the magistrate judge: (1) that the ALJ properly concluded that Billy was engaged in substantial gainful activity ("SGA") from 2004 to 2006;

6

(2) that the ALJ properly determined that Billy did not have any severe impairments from September 1999 through March 2013; (3) that the ALJ gave proper weight to the opinions of consultative psychologist Dr. Luckett and consultative neuropsychologist Dr. Sollinger; (4) that the ALJ properly assessed Billy's subjective complaints of his impairments; and (5) that the ALJ adequately explained why his mental residual functional capacity ("RFC") evaluation accommodates Billy's moderate limitation in concentration, persistence, and pace and his moderate limitations in interacting with others.

### A. Substantial Gainful Activity

Billy argued to the magistrate judge that the ALJ erred when she found that he had engaged in substantial gainful activity from 2004 to 2006, because the evidence showed that Billy was unable to complete all the assigned duties of the job and that he received special assistance while on the job. He complained that the ALJ only looked at his earnings and not at the accommodations he received.

The magistrate judge found that the ALJ's conclusion that Billy was engaged in substantial gainful activity was supported by substantial evidence. Billy objects that the ALJ was required to examine the actual work performed by Billy and the special accommodations provided to him in accordance with 20 C.F.R. 404.1573.

The regulations define substantial work activity as work that involves doing significant physical or mental abilities. Work may be substantial even if it is done on a part-time basis or if a person gets paid less or has less responsibility than in a previous job. 20 C.F.R. § 404.1572(a). Work is gainful when it is done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 404.1572(b). Work duties requiring the use of experience, skills,

supervision, and responsibilities, or that contribute substantially to the operation of a business, tend to show that one has the ability to work at the substantial gainful activity level. 20 C.F.R. § 404.1573(a). Work done under special conditions may, but does not necessarily, show that work is not substantial gainful activity. Examples of special conditions include requiring and receiving special assistance from other employees, being allowed to work irregular hours or take frequent rest breaks, being provided special equipment or assigned work especially suited to an impairment, being able to work only because of specially arranged circumstances, such as having other persons helping prepare for work or providing transportation to and from work, being allowed to work at a lower standard of productivity or efficiency than other employees, or being given the opportunity to work despite an impairment because of family or other special relationships. 20 C.F.R. § 404.1573(c).

Billy worked as a truck driver for a logging and chipping company during 2004 through 2006 and his earnings at that job created a presumption of substantial gainful activity. At the hearing, Billy's attorney argued that Billy received accommodations in that the employer was his cousin and Billy got extra time to complete his work, received help with his paperwork, and was only given routes where people knew him. R. 49, 279-282, 291-292. The ALJ considered Billy's argument at Step 2 of her evaluation, finding that although Billy tried to show that the work was accommodated because the company was owned by a cousin, Billy had obtained a commercial driver's license and was driving a truck for the company. She found that the level of intellectual and physical capacity required to obtain the commercial driver's license undermined his claim that he received special accommodations that kept the work from being substantial gainful activity. R. 16, 20.

Billy argues that the ALJ did not truly address the evidence completed by Billy's employer in her decision because she did not refer specifically to the work activity questionnaire at R. 291-292, which showed he received help on the job and was less productive than other employees. However, at the hearing, Billy's attorney discussed the help Billy received on the job and the fact that his productivity was half that of his co-workers and the ALJ referred to the testimony in her decision. R. 49-50, 20.

It is the job of the ALJ to weigh the evidence in the record and she did so here. The court finds that the fact that Billy obtained and used a commercial driver's license in the position is substantial evidence that the work was substantial gainful activity. Therefore, Billy's objection to the magistrate judge's finding that the ALJ's decision was supported by substantial evidence is **OVERRULED**.

### B. Existence of a Severe Impairment

For Billy's CDB and DIB claims (September 1999 through September 2003 and July 2003 through March 2013), the ALJ concluded at Step 2 of the analysis that Billy did not have any severe impairments. The magistrate judge found that the ALJ discussed the evidence related to Billy's traumatic brain injury at length before determining that he did not have a severe impairment.

Under the regulation in effect at the time Billy filed his application for benefits, an impairment was non-severe if it did not significantly limit a claimant's physical or mental ability to do basic work activities. Work activities include understanding, carrying out and remembering instructions, use of judgment, responding appropriately to supervision, co-

workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521 (2013).

The ALJ found that for the CDB claim, there was no evidence of any medically determinable mental impairment and that longitudinal evidence during the period showed completely normal mental status, psychiatric, and psychological findings. During the period of the DIB claim, the ALJ found that there was a reference to a learning disability from a primary care provider, but it appeared to be adopted from Billy's self-reporting. The doctor noted completely normal psychological findings. R. 23, 674, 710.

The magistrate judge concluded that substantial evidence supported the ALJ's conclusion at Step 2 of the evaluation that although Billy suffered from intellectual difficulties during the relevant period of his CDB and DIB claims, the deficiencies did not cause more than a minimal limitation on his ability to do work. No treating source diagnosed Billy with a medically determinable mental impairment during the CDB period and all mental health findings were normal. Also, while Billy was diagnosed with a learning disability at the end of the DIB period, he did not seek or receive mental health treatment during the period.

Billy objects that neither the ALJ nor the magistrate judge acknowledged that state agency psychological consultants found that Billy had severe impairments of intellectual disability, anxiety disorder, organic brain syndrome, and a learning disability through the CDB period and through his date last insured. However, the state agency consultants were analyzing the three different periods for evidence of a severe impairment and it appears that their findings that Billy had severe impairments pertained only to the later period for which he was seeking SSI.

Both state agency consultants listed the severe impairments on their disability determination forms, but they also concluded with regard to the CDB and DIB time frames that Billy's condition "did not result in significant limitations in [his] ability to perform basic work activities prior to age 22," R. 76, and "[i]n order to be entitled for benefits [his] condition must be found to be severe prior to 3/31/2013. The evidence in the file is not sufficient to fully evaluate [his] claim and the evidence needed cannot be obtained." R. 86. Their conclusions indicate that they did not find his impairments to be severe for those time frames.

With regard to Billy's SSI claim, state agency psychologist Kim Zweifler, Ph.D, found enough evidence in the record to assess the severity of his claims and examined the evidence in the record that related to that time frame. R. 94-100. Dr. Zweifler concluded that Billy had severe impairments. See R. 100. "[His] condition results in some limitation in [his] ability to perform work related activities."

Thus, the ALJ's conclusion was consistent with the state agency psychological consultants' findings with regard to the severity of Billy's claims in the three time frames. In addition, the ALJ cited to the lack of evidence in the record for the first two time frames in support of her finding that Billy's impairments were not severe. Therefore, Billy's objections to this finding by the ALJ is **OVERRULED**.

### C. Weight given to Opinions of Consultative Examiners

All medical opinions are to be evaluated based on the examining relationship, with more weight given to sources who have examined a claimant; treatment relationship, with more weight given to treating sources; length of treatment relationship and frequency of examination; nature and extent of treatment relationship; supportability; consistency with the

record as a whole; specialization of the medical source; and other factors such as understanding of disability programs and their evidentiary requirements. 20 C.R.F. §416.927.

Billy saw consultative examiner Jeffrey Luckett, Ph.D., on February 26, 2014. Dr. Luckett administered a series of tests to Billy and found that his full scale IQ equaled 64 (1st percentile) which put him in the mentally deficient range of intellectual abilities. He also found Billy to be in the severe range of depression. R. 696. Dr. Luckett concluded that Billy should not be considered capable of making his own financial decisions, but found that he could perform work doing simple and repetitive tasks such as working on an assembly line, particularly if he could model his performance off those around him. He could work full time, but would not do well working with the public because of his low IQ and his articulation problems. He would be able to work with peers and supervisors appropriately. R. 701-702.

The ALJ gave Dr. Luckett's opinion partial weight because Billy's high school IQ scores were higher than the scores assessed by Dr. Luckett and because other testing raised validity issues. R. 32. Billy argued that Dr. Luckett based his conclusions that Billy could work despite his low IQ on the fact that Billy had worked previously, without taking into account the accommodations given to Billy in the truck-driving job.

The magistrate judge found that although Dr. Luckett noted that Billy previously performed simple, repetitive work, there was no indication that Billy's prior work was the basis for Dr. Luckett's conclusions as to Billy's current employment capability. Rather, he arrived at his summary and conclusions after performing a thorough mental status evaluation and intellectual assessment. The magistrate concluded that substantial evidence supported the ALJ's determination to give the opinion partial weight.

12

In his objections, Billy repeats the argument he made to the magistrate judge that Dr. Luckett based his opinion about Billy's capabilities on his previous work experience and therefore the ALJ should not have given the opinion any weight. However, Billy's argument ignores the fact that Dr. Luckett tested Billy's intellectual abilities, performed a mental status examination, and provided a detailed report of the results. As the magistrate judge found, Dr. Luckett's conclusion that Billy could perform simple, repetitive tasks with no contact with the public is supported by the test results and examination. Therefore, the court finds that the ALJ's determination to give Dr. Luckett's opinion partial weight is supported by substantial evidence and Billy's objection is **OVERRULED**.

Billy also saw consultative examiner Ann Sollinger, Ph.D., for a neuropsychological evaluation on August 28, 2014 to assess his cognitive function and suggest treatment recommendations. Dr. Sollinger examined Billy and conducted several tests. Dr. Sollinger concluded that scores on measures of performance validity suggested that Billy was unable to maintain adequate test engagement across all tasks during the assessment, likely due to intense and severe anxiety during the evaluation. Thus, the test results were inconclusive and no impairment could be confirmed. R. 772, 778.

Dr. Sollinger opined that Billy's emotional and behavioral state was one of intense psychotic distress and disability. Billy's observed level of anxiety and mood disturbance was consistent with his self-report of severe levels of anxiety and depression. Dr. Sollinger assessed Billy as being disabled in multiple spheres of his life, including even simple social activities, and suggested that he met the criteria for Social Security disability for anxiety-related disorders.

Anxiety was his predominant disturbance with evidence of persistent anxiety with panic attacks, apprehensive expectation, and vigilance. R. 778-779.

The ALJ gave Dr. Sollinger's opinion little weight, finding she offered no explanation in terms of signs or laboratory findings to support her conclusion. The ALJ noted that the purpose of the examination was to determine whether Billy had cognitive impairments and that Dr. Sollinger was unable to do so because the test results were invalid. With regard to Dr. Sollinger's opinion that Billy meets the listing for an anxiety disorder, the ALJ commented that there was no evidence to indicate that the doctor had training in applying the listings, and that overall, her opinion was not well-supported on its face and not consistent with the doctor's own evaluation report or the record as a whole. R. 32.

Billy argued to the magistrate judge that the ALJ erroneously asserted that Dr. Sollinger solely relied upon Billy's subjective statements in arriving at her opinions, misconstrued Dr. Sollinger's statement regarding the validity of the cognitive testing, and ignored the entirety of the report that provided support for the opinions she rendered. The magistrate judge found that the ALJ thoroughly reviewed Dr. Sollinger's report and conclusions before finding that they were inconsistent with and unsupported by the record.

On de novo review, the court agrees with Billy and finds that the ALJ erred by giving little weight to Dr. Sollinger's opinion. For example, the ALJ discussed the invalidity of the test results for cognitive impairments, but did not discuss them in terms of Billy's anxiety, or the fact that Dr. Sollinger found that Billy was unable to maintain adequate test engagement, most likely due to intense and severe anxiety. R. 778.

The ALJ discounted Dr. Sollinger's description of Billy's anxiety as "intense psychiatric distress" because Dr. Sollinger's mental status examination findings were "normal." R. 32. However, that conclusion is not fully supported by the record. The ALJ noted the report where Billy was only "mildly anxious" on July 21, 2014, R. 783, which she found to undermine Dr. Sollinger's assessment, but the doctor also noted "intense and severe anxiety" at a subsequent evaluation, and the ALJ made no mention of that observation. R. 776, 778.

The ALJ also concluded that Dr. Sollinger seemed to have relied on Billy's self-reporting, but Dr. Sollinger oversaw administration of the PHQ-9, which objectifies the degree of depression severity,[4] and the GAD-7, which measures the severity of a patient's anxiety.[5] Billy scored in the "severe" range on both evaluations. Id. Dr. Sollinger also observed him and found his levels of anxiety and mood disturbance to be severe. Id.

The ALJ also discounted Dr. Sollinger's opinion because there was no longitudinal treatment relationship. R. 32. However, the ALJ gave "great weight" to the opinions of the state agency psychological consultants, even though they never examined Billy at all. R. 33.

The ALJ also said Dr. Sollinger's opinion was inconsistent with other evidence in the record. However, the record shows that Dr. Sollinger's opinion was consistent with records from Piedmont Community Services where Billy started receiving treatment the same month he saw Dr. Sollinger. R. 821. He reported having panic attacks three times per day, sleeping very poorly, isolating himself in his room, becoming intensely angry a few times per week, and sometimes feeling that it would be better to be dead. His mood was described as sad, irritable,

---

[4] https://www.mdcalc.com/phq-9-patient-health-questionnaire-9 (last viewed September 30, 2019).
[5] https://www.mdcalc.com/gad-7-general-anxiety-disorder-7 (last viewed September 30, 2019).

and anxious; his thought content was pre-occupied; and his thought processes were perseverative. R. 870-871. He was diagnosed with panic disorder with agoraphobia. R. 825. On October 6, 8, and 15, 2014 his mood was described as sad or depressed and anxious. R. 839, 844, 846.

Dr. Sollinger's findings also were consistent with Dr. Luckett's findings the previous February where Billy's score on the Beck Depression Inventory-Second Edition placed him in the severe range of depression. R. 698. At that time Billy also reported that he had anxiety episodes twice per day, which caused him to shake, sweat, and have head pain. R. 699.

The court is mindful that it should defer to the ALJ's assessment of medical opinion evidence and should not interfere with the assessment when the evidence in the record supports his conclusions. However, in Monroe v. Colvin, 826 F.3d 176, 191 (4th Cir. 2016), the Fourth Circuit Court of Appeals remanded a case in part because the ALJ did not include a narrative discussion describing how evidence supported the decision to give "little weight" to consultative psychologist's opinion. The ALJ stated only that "the objective evidence of the claimant's treatment history did not support the consultative examiner's findings," but did not specify the objective evidence or to what aspects of the treatment history he was referring.

The ALJ in this case did not adequately address the fact that Dr. Sollinger's opinion that Billy suffers from severe anxiety is supported by test results and her observations of him, or that it is consistent with other evidence in the record. While an ALJ is not required to discuss every bit of evidence in the record, Billy alleges disability in part because of debilitating anxiety and panic attacks and the ALJ's lack of a detailed discussion of Dr. Sollinger's finding frustrates review of her decision. Accordingly, the court finds that substantial evidence does

not support the ALJ's decision to give little weight to Dr. Sollinger's opinion and therefore **SUSTAINS** Billy's objection to this issue.

### D. Subjective Complaints

The magistrate judge reviewed the ALJ's decision with regard to Billy's subjective complaints of impairment and found that the ALJ followed the two-step process set out in SSR 16-3P.[6] The magistrate judge further concluded that the ALJ supported her analysis with substantial evidence.

In his objections to this finding, Billy argues that the ALJ did not acknowledge the extent to which Billy performs his activities of daily living and did not explain how the activities showed he could persist throughout an eight-hour workday, citing Brown v. Comm'r of Soc. Sec., 873 F.3d 251, 269 (4th Cir. 2017). There, the Fourth Circuit found that a statement by the ALJ that a claimant's daily activities supported an adverse credibility determination was insufficient when the ALJ failed to note the limited extent of the activities or explain how they showed he could sustain a full-time job.

The Fourth Circuit cited to a number of errors the ALJ made, including "flouting the treating physician rule," and relying on the findings of a non-examining medical source that conflicted with the ALJ's own findings about the claimant's physical impairments. Id. at 268-269. The ALJ also misstated the record, finding the claimant had been exercising and working

---

[6] "SSR 16-3p" refers to Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, which provides guidance about how the Social Security Administration evaluates the intensity, persistence, and limiting effects of symptoms in disability claims. Under the ruling, a two-step process is used to evaluate an individual's symptoms. At Step 1, a determination is made whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. At Step 2, an evaluation is made of the intensity and persistence of an individual's symptoms such as pain, and a determination is made of the extent to which the individual's symptoms limit his ability to perform work-related activities.

around the house when there was no evidence of such; finding that he had abandoned some of his allegations which was not true; and disregarding reasons why the claimant had opted to not have surgery. Id. at 269-270. The concerns expressed by the Fourth Circuit in Brown are not present here.

Nevertheless, the court finds that the ALJ's reliance on Billy's daily activities is not substantial evidence on which to discredit his subjective allegations. The ALJ summarized Billy's daily activities after looking at his October 2013 and February 2015 disability reports and his testimony at the hearing. She noted that he performed his own self-care and took out the trash. He had a driver's license and used to have a commercial driver's license. He liked to read the newspaper and watch sports on television. He got along with his parents and described his family as "loveable." He did not like to be around people and tended to stay in the house. R. 32.

None of Billy's daily activities—taking out the trash, reading the newspaper, or watching sports on television—translate into an ability to work a full day despite limited cognitive ability, anxiety, and panic attacks. And while he does have a driver's license, he no longer drives. R. 53, 482. Indeed, he testified that riding in a car is a main cause of his panic attacks. R. 56. Courts in this circuit and elsewhere have noted that a claimant's ability to perform modest activities of daily living with some assistance is not reason to reject claims of disabling pain. Ellis v. Colvin, No. 5:13-CV-43, 2014 WL 2862703 at *12 (W.D. Va. 2014) (collecting cases). Similarly, the fact that Billy is comfortable at home and around family is not substantial evidence that his panic attacks are not disabling, or that he can otherwise work a full workday or workweek.

The court finds that substantial evidence does not support the ALJ's determination to not credit Billy's subjective evidence of limited cognitive functioning or disabling anxiety attacks. Therefore, Billy's objections are this issue are **SUSTAINED**.

**E. Mental RFC**

The ALJ found that Billy had a moderate impairment with regard to concentration, persistence, and pace. In assessing Billy's mental RFC, the ALJ found that he could do work that was low stress, defined as requiring only occasional decision-making and only occasional changes in the work setting, with no interaction with the public and only occasional interaction with co-workers and supervisors. The magistrate judge found this conclusion to be supported by substantial evidence.

Billy objects that the ALJ did not adequately explain the connection between the evidence and her conclusion. His objection centers on the opinions of state agency psychological experts Dr. Zweifler and Dr. Leizer. Billy asserts that neither found that he could sustain work activity over the course of an eight-hour workday. However, both examiners found Billy to be moderately limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods." In support of their conclusions they cited to the results of testing by the consultative examiners. R. 97, 116. A person with a moderate limitation is one who has a fair ability to function independently, appropriately, and effectively on a sustained basis. 20 C.F.R. App. 1, Part. A2 § 12.00F2.

Similarly, Billy objects that the ALJ's determination that his moderate limitation in interacting with others is accommodated by no contact with the general public and occasional

interaction with co-workers and supervisors is not supported by substantial evidence. However, both agency experts stated that Billy would have moderate difficulties interacting with the general public but would be able to handle routine social interactions with small numbers of people. R. 98, 116-117. Accordingly, were that the only evidence relied upon by the ALJ, her conclusion related to Billy's mental RFC would be supported by substantial evidence.

However, Billy also objects that the RFC analysis is based the ALJ's failure to give proper weight to the opinions of the consultative examiners. As discussed above, the court finds that substantial evidence does not support the ALJ's determination to give little weight to Dr. Sollinger's opinion that Billy suffers from debilitating anxiety. Thus, to the extent the ALJ based the mental RFC on her analysis of Dr. Sollinger's opinion, her conclusion is not supported by substantial evidence. On remand, the Commissioner is directed to assess Dr. Sollinger's opinion as discussed herein. Additionally, the Commissioner should evaluate Billy's mental RFC in light of the further assessment of Dr. Sollinger's opinion. Billy's objection to the mental RFC assessment is **SUSTAINED**.

## CONCLUSION

For the reasons stated, the court finds that the magistrate judge erred in finding that the ALJ's assessment of the opinion of consultative examiner Dr. Sollinger is supported by substantial evidence and that the mental RFC assessment is supported by substantial evidence. As such, the court **REJECTS** magistrate judge's report and recommendation and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

An appropriate Order will be entered.

Entered: 09/30/2019

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge